UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| LOUIS EDWARD HILL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.: 3:21-CV-31-TAV-DCP ) |
| CENTURY ARMS, INC., and CENTURY INTERNATIONAL ARMS, INC., | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on defendants' second motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, for a more definite statement [Doc. 20]. Plaintiff has responded [Doc. 22], defendants have replied [Doc. 23] and this matter is now ripe for the Court's review. For the reasons explained below, defendants' second motion to dismiss or for a more definite statement [Doc. 20] is **DENIED**.

### I. Background

The following facts are taken from plaintiff's amended complaint [Doc. 18], which the Court accepts as true for purposes of this Rule 12(b)(6) motion. Plaintiff was injured when a 9mm Canik TP9SF Elite model pistol designed, manufactured, imported, marketed, distributed, and/or sold by defendants fell, while in the holster, struck the ground, and fired [*Id.* ¶ 1]. Plaintiff alleges that the subject pistol unintentionally discharged due to a safety defect known as a "Drop-Fire Defect," which caused the pistol to fire if dropped [*Id.* ¶ 2].

Plaintiff asserts that Century Arms imports firearms, including the subject firearm, into the United States, and then, an affiliated entity, Century International Arms, sells and distributes the same firearms throughout the United States [*Id.* ¶ 5]. Plaintiff claims that both defendants are in the business of designing, manufacturing, selling, and/or distributing firearms, and are so intertwined that they are essentially one entity [*Id.* ¶¶ 5, 16].

Plaintiff alleges that defendants knew or reasonably should have known of the Drop-Fire Defect in the subject pistol and chose not to recall the subject model firearms [*Id.* ¶ 6]. Plaintiff states that, on September 2, 2017, Kenneth Gunnells, a resident of Prattville, Alabama, was injured after the same model pistol fired when dropped under similar circumstances, and Mr. Gunnells subsequently filed a products liability lawsuit against defendants, but defendants never recalled the subject pistol model [*Id.*]. Further, plaintiff contends that on September 1, 2017, defendants announced a "Product Safety Warning and Severe Duty Upgrade Notice," which applied to the subject pistol model, and stated that the dropping of pistols may result in damage to safety features and unintentional discharge [*Id.* ¶ 7]. Plaintiff also alleges that Century Arms, the importer of the subject pistol, and Century International Arms, the distributor of the subject pistol, both exercised substantial control over the design, testing, manufacture, packaging, or labeling of the subject firearm, and had actual knowledge of the defective condition of the subject firearm at the time it supplied the same [*Id.* ¶¶ 27–28].

Based on these facts, plaintiff asserts several claims against the defendants, and seeks both compensatory damages and punitive damages under Tennessee Code Annotated § 29-39-104(c) [*Id.* ¶¶ 38–170].

Plaintiff attaches to his amended complaint a copy of the complaint filed by Mr. Gunnells against defendants and others on September 6, 2019, alleging similar defects in the same firearm model [Doc. 18-1]. Plaintiff further attaches a "Product Safety Warning and Severe Duty Upgrade Notice," which states that on September 1, 2017, Century Arms announced such notice as to the Canik 9x19 mm pistols, including the subject firearm model [Doc. 18-2, p. 1]. The notice states that "[t]here are no safety concerns with the pistols when used under ordinary conditions" but that "[e]valuations and tests have shown that **repeated abusive dropping of pistols may result in damage to safety features and unintentional discharge**" [*Id.* (emphasis in original)].

## II. Standard of Review

In deciding a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). This assumption of factual veracity, however, does not extend to bare assertions of legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). And the Court is not "bound to accept as true a legal conclusion couched as a factual allegation."

*Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The allegations must "possess enough heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557.

### III. Analysis

#### A. Motion to Dismiss Punitive Damages Claim

Defendants contend that plaintiff's claims for punitive damages should be dismissed under Rule 12(b)(6) because plaintiff has not alleged any specific activity that could plausibly give rise to a cognizable claim for punitive damages, as he has not specifically alleged that either defendant is the manufacturer of the firearm at issue and has not alleged "how or why" either defendant (1) exercised substantial control over the design, manufacture, or warnings that caused the harm, (2) performed an alteration or modification which was a substantial factor in causing the subject incident, or (3) had actual knowledge of the allegedly defective condition when the subject firearm left their control [Doc. 20-1, pp. 4, 7].

Plaintiff responds that his amended complaint satisfies Rule 8's pleading requirements [Doc. 22, p. 5]. He states that Century Arms imported the subject pistol from a foreign firearm manufacturer who has yet to be identified by the defendants, and Century

4

International Arms then distributed the subject pistol throughout the United States [*Id.* at 2, 5]. Plaintiff contends that the discovery process will indicate the standard operating procedures and division of labor between the companies and the control each exerted over the design, manufacturing, testing, packaging, labeling, marketing, and distribution of the subject firearm [*Id.* at 3]. Nevertheless, plaintiff states that he has alleged two ways that defendants may be liable for punitive damages: (1) exercising substantial control over the design, testing, manufacturing, packaging or labeling of the firearm; and (2) having actual knowledge of the firearm's defect [*Id.* at 5].

> Tenn. Code Ann. § 29-39-104(c) provides that:
>
> The seller of a product other than the manufacturer shall not be liable for punitive damages, unless the seller exercised substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the harm for which recovery of damages is sought; the seller altered or modified the product and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought; or the seller had actual knowledge of the defective conditions of the product at the time the seller supplied the same.

Tenn. Code Ann. § 29-39-104(c). In this case, plaintiff alleges that defendants are liable for punitive damages because: (1) they exercised substantial control over the design, testing, manufacture, packaging, or labeling or the subject firearm; and (2) they had actual knowledge of the defective conditions of the subject firearm. The Court will address whether plaintiff has plausibly alleged a claim for punitive damages under each of these theories.

5

### 1. Substantial Control

As to substantial control, defendants contend that there is no allegation as to how a mere importer like Century Arms or a distributor like Century International Arms exercised substantial control over the design, testing, manufacturing, packaging, or labelling of the product, and the amended complaint's conclusory statement that each defendant exercised substantial control over such simply parrots the statutory elements for this cause of action [Doc. 20-1, p. 7]. Defendants contend that this is the kind of "formulaic recitation" of the elements of a cause of action that courts have deemed insufficient to survive a Rule 12(b)(6) challenge [*Id.* at 8]. Plaintiff responds that he has sufficiently alleged that the Century Arms defendants exercised substantial control over the design, testing, manufacturing, packaging, or labeling of the subject firearm before those defendants placed it into the stream of commerce in the United States [Doc. 22, pp. 5–6].

The Tennessee Products Liability Act of 1978 ("TPLA") generally bars product liability actions against sellers of a product, unless the seller is also the manufacturer of the product, but permits such suits under certain circumstances, including when the seller "exercised substantial control over that aspect of the design, testing, manufacture, packaging, or labelling of the product that caused the harm[.]" *Spencer v. Caracal International, LLC*, No. 2:20-cv-33, 2021 WL 3550727, at *3 (M.D. Tenn. Aug. 11, 2021) (quoting Tenn. Code Ann. § 29-28-106). The language of this exception in the TPLA is identical to the language in the punitive damages statute at issue here. *Compare* Tenn.

6

Code Ann. § 29-28-106 *with* Tenn. Code Ann. § 29-39-104(c), and the Court will therefore look to case law addressing the TPLA's identical language.

Applying the TPLA, the Middle District of Tennessee has concluded that a complaint that alleged that only one defendant was the manufacturer of the product at issue, an air conditioning unit, and merely contained conclusory allegations that all other defendants were responsible for designing and manufacturing the air conditioning unit, was insufficient to support a reasonable inference that the other defendants qualified as manufacturers under the TPLA. *Steverson v. Walmart*, No. 3:19-cv-140, 2020 WL 4700831, at *4–5 (M.D. Tenn. Aug. 13, 2020), *report and recommendation adopted*, No. 3:19-cv-140, 2020 WL 5816245 (M.D. Tenn. Sept. 30, 2020). Specifically, plaintiffs provided no factual support for any assertion that the other defendants were somehow involved in the manufacture or design of the air conditioning unit, but instead, merely made conclusory statements that some of the other defendants were involved in the manufacture or design of the unit. *Id.*

However, in another case addressing a Rule 12(b)(6) motion under the TPLA, under factual circumstances similar to those present in the instant case, the Middle District of Tennessee recently concluded that plaintiff's allegations of substantial control were not conclusory, and therefore, survived the Rule 12(b)(6) motion. *Spencer*, 2021 WL 3550727, at *4. The court pointed to plaintiff's allegations that the defendants had a principal/agent, partnership, joint venture, and/or alter-ego relationship when they manufactured and distributed the firearm at issue in that case. *Id.* The court noted the complaint's allegations

7

that defendant Caracal USA was the exclusive importer and manufacturer of Caracal products in the United States and Caracal USA and defendant Steyr had overlapping personnel, shared an address at a manufacturing center, and recall notices were sent from that shared address. *Id.*

The Middle District concluded that, while these facts did not overwhelmingly point to Steyr's involvement in the manufacturing process, they were sufficient to "nudge[] their claims across the line from conceivable to plausible." *Id.* (quoting *Twombly*, 550 U.S. at 570). The court concluded that it was plausible that Steyr, through its close relationship with the Caracal defendants, was involved in designing the subject firearm. *Id.* The court found that it was therefore appropriate for the parties to "use discovery to develop more facts." *Id.* at *5 (quoting *Minges v. Bulter Cnty. Agr. Soc.*, 585 F. App'x 879, 880–81 (6th Cir. 2014)). The Court distinguished the case from *Steverson*, stating that the *Steverson* plaintiffs offered no factual support for their claim that defendants were manufacturers, and the plaintiffs in *Spencer* had provided factual support. *Id.* Addressing argument regarding the plaintiff's punitive damages claim under Tennessee Code Annotated § 29-39-104(c), the Court concluded, for the same reasons, that, because the complaint plausibly alleged that Steyr was a manufacturer of the firearm, the punitive damages claim survived. *Id.* at *7.

Here, the Court finds that the amended complaint provides factual detail that falls somewhere between that provided by the respective plaintiffs in *Steverson* and *Spencer*. Plaintiff states that, upon information and belief, both of the defendants exercised

8

substantial control over the design, testing, manufacture, packaging, or labeling of the subject firearm [Doc. 18 ¶¶ 27–28]. This allegation, standing alone, is a conclusory legal statement that cannot support a claim for punitive damages under § 29-39-104(c) under the substantial control prong, as it merely restates the statutory language.

However, plaintiff also alleges that both defendants are Vermont corporations with a principal place of business in Delray Beach, Florida, and have a registered agent of Michal Sucher at 430 S. Congress Avenue, Suite 1A, Delray Beach, Florida [*Id.* ¶¶ 10, 12]. Plaintiff alleges that defendant Century Arms is the importer of the subject firearm and defendant Century International Arms is the seller of the subject firearm [*Id.* ¶¶ 11, 13]. Plaintiff also alleges that defendants were part of a joint venture or were otherwise affiliated entities that are vicarious liable for the acts and omissions of the other, and both are affiliated in the business of designing, manufacturing, selling, and/or distributing firearms [*Id.* ¶¶ 15–16]. Many of these factual allegations overlap with those that the *Spencer* court found sufficient to state a plausible claim for damages under § 29-39-104(c). *See* 2021 WL 3550727, at *2.

But, there is one critical difference between the factual allegations in *Spencer* and those here. In *Spencer*, the plaintiffs identified the manufacturer of the firearm at issue—Caracal USA—and then provided factual allegations linking defendant Steyer to the manufacturer, such that it was plausible that Steyer was involved in the design, testing, manufacture, packaging, or labeling of the subject firearm. *See id.* at *4. By contrast, plaintiff here provides factual allegations linking Century Arms and Century International

9

Arms, such that it is plausible that one defendant could be involved in the affairs of the other. However, plaintiff has not alleged that either of these entities are the manufacturer of the subject firearm, therefore, even accepting as true plaintiff's allegation that the defendants are affiliated entities that are liable for the actions of the other, such still does not plausibly allege that either defendant was involved in the design, testing, manufacture, packaging, or labeling of the subject firearm.

The Court does note that plaintiff alleges, in his response to the instant motion, that Century Arms imported the subject firearm from another company in Turkey and that it is unclear what the division of labor is between Century Arms, Century International Arms and "their Turkish counterpart" regarding the design, manufacturing, testing, marketing, and distribution of the subject firearm [Doc. 22, pp. 2–3]. However, plaintiff has not included any such allegations regarding a potentially related Turkish manufacturer in his amended complaint [*See* Doc. 18].

Because plaintiff has not alleged that either of the defendants are the manufacturer of the subject firearm, and, indeed, makes no allegations in the amended complaint about the manufacturer of the subject firearm, the Court finds that plaintiff's allegations regarding the relatedness of defendants Century Arms and Century International Arms is insufficient to establish that either of these entities had substantial control over the design, testing, manufacturing, packaging, or labelling of the subject firearm. Beyond these factual allegations, the only other relevant portion of the complaint is plaintiff's bare assertion that the defendants exercised substantial control over the design, testing, manufacturing,

10

packaging, or labelling of the subject firearm [Doc. 18 ¶¶ 27–28]. And, as noted previously, this allegation alone, which is a mere formulaic recitation of the statutory requirement, is insufficient to state a plausible claim for punitive damages. Accordingly, the Court finds that plaintiff has not stated a plausible claim for relief for punitive damages under § 29-39-104(c) under the substantial control theory.

### 2. Actual Knowledge

As to "actual knowledge" of the alleged defect, defendants contend that the amended complaint appends two new exhibits which appear intended to express "actual knowledge" of a defect, but the new paragraphs of the First Amended Complaint do not contain any factual allegations to describe the "how and why" these items show such knowledge [Doc. 20-1, p. 9]. Defendants argue that the First Amended Complaint contains only a vague and threadbare allegation that they had actual or constructive notice of the alleged defects [*Id.* at 10].

Plaintiff responds that he has alleged that the Century Arms defendants had actual knowledge of the defect in the firearm before his injury because: (1) on September 7, 2017, an Alabama resident, Mr. Gunnells, was injured in a similar manner as plaintiff; and (2) on September 1, 2017, Century Arms announced a "Product Safety Warning" that the subject pistol may fire when dropped [Doc. 22, pp. 3, 6–7].

Defendants reply that the Gunnells litigation is not sufficient to plausibly establish actual knowledge, because the complaint in that action was filed after plaintiff's injury [Doc. 23, pp. 3–4]. Further, defendants argue that the product safety warning plaintiff

11

references only related to situations of "repeated abusive dropping" of the pistol damaging internal components, and therefore, is insufficient to state a plausible claim for punitive damages through the actual knowledge theory [*Id.* at 5].

First, the Court finds that the amended complaint contains sufficient factual allegations explaining the exhibits and how such allegedly demonstrate actual knowledge. The amended complaint states as follows:

> 6. Defendants knew or reasonably should have known of the Drop-Fire Defect inherent in the subject pistol and chose not to recall the subject model firearms. For instance, on September 2, 2017, Kenneth Gunnells, a resident of Prattville, Alabama, was injured after a 9mm Canik TP9 pistol (serial number: 13AI00998) just like the Plaintiff's fired when dropped. When the Gunnells pistol fired, it was in the holster with the trigger covered. Mr. Gunnells subsequently filed a product liability lawsuit against the Defendants . . . The operative complaint of that case is attached hereto as Exhibit I. Nevertheless, Defendants have never recalled the subject pistol model.
>
> 7. Additionally, on September 1, 2017, Defendants announced a "Product Safety Warning and Severe Duty Upgrade Notice." The notice was called a "voluntary upgrade" rather than a recall, but applied to the subject pistol model . . . . The notice admitted that "dropping of pistols may result in damage to safety features and unintentional discharge." Nevertheless, Defendants, to date, have not recalled these dangerous pistols that will fire without the trigger being pulled. The notice is attached hereto as Exhibit 2.

[Doc. 18, ¶¶ 6–7]. The Court finds that these factual allegations are sufficient to place defendants on notice of the specific ways in which plaintiff alleges that they had actual knowledge of the defect in the subject firearm that caused his injuries, as required by Rule 8 of the Federal Rules of Civil Procedure.

However, the inquiry does not end there, because defendants allege that, even taking these allegations as true, they cannot show that defendants had actual knowledge of the

12

alleged defect in the subject firearm. Accordingly, the Court will turn to each of these alleged ways that defendants had actual knowledge to determine whether they could plausibly indicate that defendants had actual knowledge of the alleged defect.

As to the Gunnells litigation, defendants contend that such cannot establish actual knowledge of the alleged defect in the subject firearm, because the complaint in the Gunnells litigation was filed after plaintiff's injury in this case [Doc. 23, pp. 3–4]. In his amended complaint, plaintiff alleges that he was injured on February 25, 2019 [Doc. 18 ¶ 35]. And, although he alleges that the Gunnells injury occurred on September 2, 2017, [*Id.* ¶ 6], the Gunnells complaint, attached to plaintiff's amended complaint as Exhibit 1, clearly indicates that it was filed on September 6, 2019, after plaintiff's injury had occurred [Doc. 18-1, p. 1]. Notably, plaintiff does not allege how the defendants would have been placed on notice of the alleged defect by Mr. Gunnells's injury, prior to the filing of any litigation based on that injury. Because plaintiff's allegations regarding the Gunnells litigation only plausibly indicate that defendants had actual knowledge of the alleged defect as of September 6, 2019, several months after plaintiff's injury, the Court finds that the allegations contained in the complaint and Exhibit 1 do not plausibly indicate that defendants had actual knowledge of the alleged defect prior to plaintiff's injury, such that they could be liable for punitive damages under § 29-39-104(c).

As to the "Product Safety Warning and Severe Duty Upgrade Notice," defendants appear to argue that the statements contained in the notice are insufficient to establish that they had actual knowledge of the alleged defect in this case [Doc. 23, p. 5]. Although

13

plaintiff describes the notice as admitting that "dropping of pistols may result in damage to safety features and unintentional discharge" [Doc. 18 ¶ 7], the notice states as follows:

> Delray Beach, Fla. – (September 1, 2017) Century Arms, North America's premier AK manufacturer, announced today the Canik Product Safety Warning and Severe Duty Upgrade Notice. This notice applies to Canik's 9.19 mm pistols: TP9SA, TP9SF, TP9SFx, TP9SF Elite, TP9SF Elite-S. Canik's other products are not subject to this notice. All Canik pistols comply with and exceed current industry and military abusive handling standards. There are no safety concerns with the pistols when used under ordinary conditions.
>
> Canik is committed to continuously improving its product performance. Evaluations and tests have shown that **repeated abusive dropping of pistols may result in damage to safety features and unintentional discharge.**
>
> <u>DANGER</u>: **IF ANY FIREARM IS DROPPED INTERNAL PARTS MAY HAVE BEEN DEFORMED, DAMAGED, OR DISABLED.** The product <u>must</u> be inspected by a qualified gunsmith or returned for inspection after any significant impact.
>
> . . .
>
> Canik is committed to manufacturing safe, reliable, innovative and affordable firearms. We are offering a *voluntary* upgrade to the trigger safety spring and firing pin block spring on the Canik models noted above. This is to further increase the safety of Canik pistols for enhanced drop discharge prevention in heavy/severe duty conditions that are *beyond* industry standards. The Severe Duty Upgrade does not alter any feature or design of the pistols. Canik will provide all parts and workmanship at no charge, but customers will be responsible for shipping costs.

[Doc. 18-2, pp. 1–2 (emphasis in original)]. Although the Court understands defendants' argument that plaintiff's complaint leaves out important limitations to the warning contained in this notice, the Court nevertheless finds that the matter of whether or not the notice is indicative of actual knowledge is a factual dispute not appropriate for disposition in this Rule 12(b)(6) motion. Instead, given this notice, which relates to the alleged defect

14

in this case, the Court finds that plaintiff has plausibly stated a claim that defendants had actual knowledge of the alleged defect at the time of issuing the "Product Safety Warning and Severe Duty Upgrade Notice." Accordingly, because plaintiff has plausibly stated at least one way in which defendants may be liable for punitive damages under § 29-39-104(c), defendant's second motion to dismiss plaintiff's claim for punitive damages [Doc. 20] is **DENIED**.

### B. Motion for More Definite Statement

In the alternative, defendants request that plaintiff be required to provide a more definitive statement as to his punitive damages claims [Doc. 20-1, p. 12]. Defendants argue that plaintiff does not differentiate any of the factual allegations between either defendant and fails to plead any specific facts that could plausibly entitle plaintiff to an award or punitive damages or which demonstrate that plaintiff can plausibly meet the standards of § 29-39-104(c) [*Id.* at 13]. Plaintiff responds that an order for a more definite statement is inappropriate, because such is designed to strike at unintelligibility rather than a simple want of detail [Doc. 22 pp. 8–9].

>Pursuant to Rule 12(e) of the Federal Rules of Civil Procedure:
>
>A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.

Fed. R. Civ. P. 12(e). However, "[f]ederal courts generally disfavor motions for more definite statements," and, in light of the notice pleadings standards of Rule 8(a)(2), and the

15

opportunity for pretrial discovery, courts rarely grant such motions. *Federal Ins. Co. v. Webne*, 513 F. Supp. 2d 921, 924 (N.D. Ohio 2007). "A motion for a more definite statement should not be used as a substitute for discovery." *Id.* Therefore, such motion "must be denied where the subject complaint is not so vague or ambiguous as to make it unreasonable to use pretrial devices to fill any possible gaps in detail." *Id.* (quoting *Schwable v. Coates*, No. 3:05-CV-7210, 2005 WL 2002360, at *1 (N.D. Ohio 2005)) (internal quotation marks omitted).

For the reasons explained *supra*, the Court finds that the amended complaint [Doc. 18] plausibly states a claim for punitive damages under § 29-39-104(c). The Court likewise finds that plaintiff's allegations regarding punitive damages are not so "vague and ambiguous" that it is unreasonable to expect the parties to fill in the details through the normal discovery process. *See Webne*, 513 F. Supp. 2d at 924. Accordingly, defendants' alternate request for a more definite statement [Doc. 20] is **DENIED**.

## IV. Conclusion

For all the reasons above, the Court finds that plaintiff has stated a plausible claim for punitive damages under Tennessee Code Annotated § 29-39-104(c), and defendant's second motion to dismiss the punitive damages claims, or, in the alternative, for a more definite statement [Doc. 20] is **DENIED.**

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE