UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

LOUIS EDWARD HILL,                    )
                                      )
          Plaintiff,                  )
                                      )
v.                                    )          No. 3:21-CV-31-TAV-DCP
                                      )
CENTURY ARMS, INC., and CENTURY       )
INTERNATIONAL ARMS, INC.,             )
                                      )
          Defendants.                 )

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Defendants' Motion to Preclude the Records and Opinions of Plaintiff's Undisclosed Expert, Dr. William L. Tontz, and Any Testimony and Opinions Relying on those Records and Opinions ("Motion to Exclude Dr. Tontz") [Doc. 76] and Defendants' Motion to Exclude the Testimony of Plaintiff's Expert Robert P. Tremp and Supporting Memorandum of Law ("Motion to Exclude Tremp") [Doc. 82]. These motions are ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a). For the reasons explained below, the Court **GRANTS** Defendants' Motion to Exclude Dr. Tontz [**Doc. 76**] and **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Exclude Tremp [**Doc. 82**].

## I.    BACKGROUND

On November 28, 2017, Plaintiff purchased a 9mm Canik TP9SF Elite model pistol ("Pistol") [Doc. 18 ¶ 34]. According to the allegations in the Amended Complaint, on February 25, 2019, Plaintiff was injured when the Pistol fell while in the holster, struck the ground, and fired [*Id*. ¶¶ 1, 35]. He claims that the Pistol "unintentionally discharged due to a safety defect which

rendered [it] unreasonably dangerous and unfit for its intended use" [*Id.* ¶ 2]. The Amended Complaint alleges that Defendants "designed, manufactured, imported, marketed, distributed, and/or sold" the Pistol [*Id.* ¶ 1].[1] According to the allegations in the Amended Complaint, "on September 1, 2017, Defendants announced a 'Product Safety Warning and Severe Duty Upgrade Notice[,]'" which was not a recall but instead a "voluntary upgrade" [*Id.* ¶ 7 (emphasis omitted)]. The notice applied to Plaintiff's Pistol [*Id.* (emphasis omitted)]. The notice acknowledged that the "dropping of pistols may result in damage to safety features and unintentional discharge" [*Id.* (emphasis omitted)]. Based on the above, Plaintiff alleges negligence; strict liability for manufacturing and design defect; negligence and strict liability for failure to warn; and he includes allegations relating to vicarious liability [*Id.* ¶¶ 38–165].

Plaintiff sustained a knee injury from the accident and treated with Konstantinos Triantafillou, M.D. ("Dr. Triantafillou"), who is a board-certified, orthopedic surgeon [Doc. 76-1 p. 3]. On September 8, 2022, the parties deposed Dr. Triantafillou, wherein he was asked about Plaintiff's prognosis [*Id.* at 13]. Dr. Triantafillou testified:

> A.  Well, that's tough. That's looking into a crystal ball. He had a big hole in his joint, and I know that that is now filled with pothole materials, not the same road layer that you had originally that was paved but a big pothole now. It's filled with substandard materials. So I would say it's difficult, but the size of this hole in his joint is pretty significant. I don't think there's enough – there are a lot of case reports that do describe late destruction of the joint from these injuries. They're just not that common. My assumption is that he will develop arthritis or a roughness of the joint with time. It might not happen—it might not even happen for a decade or two, but if I had to say, he's probably more likely than not to develop arthritis. The question is, is it going to be just on [an] X-ray or clinically? And I would not be surprised if he needed, let's say, a knee replacement prematurely in the future based on the size of the pothole in this joint surface.

---

[1]    Defendants deny that they manufacture pistols and claim that they import and distribute them [Doc. 33 ¶¶ 16, 23].

[*Id.*].  In short, he testified that a total knee replacement is "more likely than not" [*Id.*].  When Plaintiff's counsel inquired again about Plaintiff's need for a knee replacement in the future, Dr. Triantafillou testified, "I do think so in the future.  It's just that the damage to the joint was too big.  The size of the joint is this big and the hole is this big (indicating).  It's hard not to think that will cause arthritis in the future that's painful" [*Id.*].

Plaintiff retained Robert P. Tremp, Jr., MA, CRC, CLCP ("Tremp"), a life care expert, who conducted an evaluation "to assess future care needs, rehabilitation planning, the extent to which conditions impede his ability to live independently, to handle all activities of daily living, and if applicable, to assess the impact on his vocational development" [Doc. 76-5 p. 3].  In a report finalized on September 26, 2022 ("Tremp's First Report"), Tremp opined that Plaintiff's future medical needs would cost $76,861.50 and would include MRIs, X-rays, physical therapy, orthopedic appointments, and a total knee replacement [*Id.* at 10–17].[2]  This list of future medical care, however, states "pending physician recommendation[,]" except the total knee replacement, which he cited to Dr. Triantafillou's deposition [*Id.*].  In rendering his opinions, Tremp reviewed Plaintiff's medical records and Dr. Triantafillou's deposition testimony [*Id.* at 7–8].

On October 25, 2022, Tremp requested that Dr. Triantafillou complete a questionnaire regarding Plaintiff's future medical needs [Doc. 76-2 p. 3].  The questionnaire directs Dr. Triantafillou to only provide opinions within "a reasonable degree of medical probability/medical certainty to occur/50.1% chance or greater of occurring" [*Id.* at 4].  Dr. Triantafillou completed the report on November 3, 2022, and stated that Plaintiff will need to be seen one time per year for the rest of his life [*Id.* at 4, 5]. He opined that Plaintiff does not need medication, pathologic

---

[2]     Tremp explains that a "Life Care Plan estimates future costs for the patient" [Doc. 76-2 p. 3].

laboratory studies, therapeutic modalities, assistive devices or therapeutic aids [*Id*. at 4, 5]. The questionnaire asks, "Is there a greater than 50% probability [Plaintiff] will require additional surgical intervention" [*Id*. at 4]. Dr. Triantafillou checked, "yes" and explains, "if/when he develops post traumatic arthritis" [*Id*. at 4]. He opines that injections are recommended on an as needed basis [*Id*. at 5]. The questionaries asks whether Dr. Triantafillou recommends joint replacement surgery, and he responds, "not now" and "only/if [he] develops arthritis" [*Id*.]. Dr. Triantafillou also recommended a referral to a joint surgeon if Plaintiff requires a total knee arthroplasty [*Id*.].[3]

At the request of Tremp, Dr. Triantafillou completed a second questionnaire on November 17, 2022 [Doc. 76-3]. The second questionnaire is the same as the first questionnaire, except that it states, "Please do not indicate treatments that are 'possible', 'prn' or 'if' as they cannot be quantified" [*Id*. at 4 (emphasis omitted)]. On the first question, regarding the frequency of which Plaintiff should be seen, Dr. Triantafillou states, "PRN[,] if experiencing pain" [*Id*.]. On whether there is a greater than 50% probability that Plaintiff will require additional surgical intervention, Dr. Triantafillou checked "yes" and explained the procedure and timing thereof as, "Unknown following for evaluation of post traumatic arthritis and future need for [total knee arthroplasty]" [*Id*.]. With respect to whether Plaintiff needs therapeutic modalities, Dr. Triantafillou opined, "probably[,] PRN" [*Id*.]. He stated that Plaintiff will "possibly" need joint replacement surgery, but it was "unknown at this time" [*Id*. at 5].[4] In addition, he recommended injections, periodic diagnostics, assistive devices and therapeutic aids as "PRN for aggravating symptoms" [*Id*.].

---

[3] The Court construes "TKA" to mean a "total knee arthroplasty."

[4] Dr. Triantafillou included another comment regarding therapeutic medicine, but it is not legible [Doc. 76-3 p. 4].

On February 9, 2023, Plaintiff's expert disclosure deadline expired [Doc. 47].[5] According to Defendants, Plaintiff disclosed the following witnesses: Charles Powell, Michael J. Whitley, Rick Harper, and Tremp [Doc. 76 p. 3]. Subsequently, on September 15, 2023, Defendants deposed Tremp [Doc. 76-8 p. 2]. Defendants state that on the day of the deposition, Plaintiff produced Tremp's expert file, which included a one-page telemedicine independent medical examination ("IME") report prepared by William Tontz, M.D. ("Dr. Tontz"), dated March 11, 2023 [Doc. 76-9 p. 2].[6] Dr. Tontz concludes:

> The patient should be afforded the ability to see an orthopedic surgeon on an annual basis for the rest of his life secondary to ongoing left knee pain. In addition, an MRI and CT scan should be afforded on an annual basis for the rest of his life to follow his knee complaints by MRI and radiographically.
>
> Viscosupplementation should be afforded the patient on a biannual basis for the remainder of his life. With reasonable medical certainty, the patient will require a total knee arthroplasty and removal of hardware for ongoing complaints of pain and posttraumatic arthritis. All opinions are to a reasonable degree of medical certainty.

[*Id.*]. During his deposition, when Tremp was asked whether there seemed to be an inconsistency between the recommendations of Dr. Triantafillou and Dr. Tontz, Tremp testified that "Dr. Triantafillou didn't have much feedback in terms of recommendations based on the input he gave" [Doc. 76-4 p. 6].[7] According to Defendants, in addition to disclosing the IME with Dr. Tontz,

---

[5]     On February 1, 2023, the Court entered a notice relating to the Scheduling Order that Plaintiff's expert disclosures were due 180 days before the trial date of August 8, 2023 (*i.e.*, February 9, 2023).

[6]     While dated March 11, 2023, Dr. Tontz electronically signed it on July 24, 2023 [Doc. 76-9 p. 3]

[7]     Defendants submitted an "united[,] uncertified dirty transcript" of Tremp's deposition [Doc. 76-4]. The parties do not appear to dispute the contents thereof.

Tremp also disclosed his Second Life Care Plan ("Tremp's Second Report") on the date of his deposition [Doc. 76 p. 8]. Dated July 26, 2023, Tremp's Second Report states that pursuant to Dr. Tontz's recommendations, Plaintiff will need orthopedic surgery appointments, viscosupplementation injunctions for the knee, total knee replacement with hardware removal, MRI of the left knee, and CT scan of the knee [Doc. 76-9 pp. 10–12]. Tremp testified that he is withdrawing the September 27, 2022 plan because "[t]he 2023 plan completely supplants the preliminary life care plan of 9/22" [Doc. 76-4 p. 12]. Tremp stated that the new information from the IME with Dr. Tontz resulted in his supplementation [*Id*.].[8] Subsequently, the following exchange occurred:

> Q. Now, if for whatever reason the Court says, hey, you know what? This Dr. Tontz report is—is not going to be admissible in this case, then will you be back to your September 27, 2022, evaluation?

> A. Well, in the eyes of the Court, yes, but just, you know, in -- in clinical terms though, I still have -- because the Court doesn't recognize the report, you know, the report of mine as a life care planner still stands, right? But obviously, if the Court doesn't admit it, then that would impact the life care plan as well.

[*Id*. at 13].

## II.    PROCEDURAL HISTORY

Based on the above, Defendants seek to exclude Plaintiff's undisclosed witness, Dr. Tontz, and they request that the Court preclude any evidence or testimony that relies on his opinions [Doc. 76]. Arguing that Plaintiff failed to comply with Rule 26(a)(2) of the Federal Rules of Civil Procedure, Defendants state that the Court must exclude Dr. Tontz's opinions pursuant to Rule 37.

---

[8]    With respect to Tremp's Second Report, Defendants state that "[t]he support for these entries roughly total[] $122,191.50 to $140,430.50" [Doc. 76 p. 8 (emphasis omitted)].

And here, Defendants contend, Plaintiff cannot show that his non-compliance with Rule 26(a)(2) was harmless or substantially justified. In arguing that Dr. Tontz's opinions should be excluded, Defendants also assert that his expert report is deficient and without a proper foundation.

Plaintiff responds that he "does not intend to call Dr. William Tontz as a witness at trial[,]" and therefore, was not required to disclose him as an expert witness. [Doc. 86 p. 1]. In addition, relying on Rule 35, Plaintiff argues that a Court order is not needed to have himself examined by Dr. Tontz or to speak with him "for whatever reason" [*Id.*]. Instead, Plaintiff contends that Defendants were supposed to request any IMEs during discovery, and they failed to do so. Plaintiff states that "[a]ny argument in the motion to strike Dr. Tontz's opinion referring to whether Robert Tremp[,] the Plaintiff's life care plan expert[,] should be allowed to use Dr. Tontz's information in Tremp's life care plan for [Plaintiff] has been superseded by the motion to preclude Robert Tremp's testimony under *Daubert* filed on September 29, 2023, [Doc. 82], which raises the same arguments regarding Tremp's testimony as set out in the current motion" [Doc. 86 p. 2]. Plaintiff states that he will address Defendants' arguments against Tremp in his response to that specific motion. Plaintiff concludes that Dr. Tontz is not an undisclosed expert witness [*Id.*].

Defendants reply that "Dr. Tontz is a testifying witness shielded from cross examination for all practical purposes and his opinions are inadmissible hearsay" [Doc. 91 p. 2 (emphasis omitted)]. Pointing to the Advisory Committee's notes on Rule 35, Defendants submit Plaintiff's argument that they were required to request the IME report during discovery is incorrect as disclosure by Plaintiff was otherwise required. But regardless, Defendants argue, they sought information and documentation evidencing or relating to medical treatment Plaintiff received because of the injuries sustained in the incident during discovery to which this IME report would be responsive. Further, Defendants argue Plaintiff has waived any argument that the untimely disclosure of Dr. Tontz's IME was harmless or substantially justified. In addition, Defendants

7

state that Plaintiff failed to respond to their arguments that Dr. Tontz's report is unreliable, thereby waiving that argument as well.

Defendants also move to exclude Tremp from testifying in this matter, relying on Federal Rules of Evidence 401, 402, 403, 407, 702, and *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579 (1993) [Doc. 82]. Defendants assert that "[b]ecause Tremp's only support for his present opinions is Dr. Tontz's sham report, and given his unreliable-first methods, his testimony should be excluded" [*Id.* at 2]. Defendants argue that Tremp's First Report is flawed, and therefore, the Court should preclude any testimony from him.

Plaintiff responds that Tremp is permitted to rely on other sources of information, such as Dr. Tontz's IME, and those sources do not have to be admissible [Doc. 93]. Plaintiff contends that case law supports his argument. But even if the Court strikes Dr. Tontz's report, Plaintiff argues that there is a sufficient basis for Tremp's life care plan, which includes Dr. Triantafillou's opinions.

Defendants reply that Plaintiff does not defend the reliability of Dr. Tontz's opinions , and therefore, has waived this argument [Doc. 97]. Given that Dr. Tontz's opinions are unreliable, Defendants assert that Tremp cannot rely on them. With respect to Tremp's First Report, Defendants state that Dr. Triantafillou did not opine that Plaintiff would need the medical treatment as Plaintiff has alleged.

## III. STANDARD OF REVIEW

In summary, Defendants seek to exclude Dr. Tontz's opinions as a sanction pursuant to Rule 37(c). In addition, they argue that Dr. Tontz's opinions are unreliable. Defendants also seek to exclude any evidence that relied on Dr. Tontz's opinions (*i.e.*, Tremp's Second Report). Defendants further request that the Court exclude all Tremp's opinions arguing that there is no factual basis to support them.

8

## A. Excluding Evidence as a Sanction

Rule 26(a)(2) of the Federal Rules of Civil Procedure governs expert disclosures, which provides that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rules of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2). "[I]f the witness is one retained or specially employed to provide expert testimony in the case[,]" then the expert "disclosure must be accompanied by a written report—prepared and signed by the witness[.]" Fed. R. Civ. P. 26(a)(2)(B). If the witness is not required to provide a written report, the offering party must submit a disclosure containing "(i) the subject matter on which the witness is expected to present evidence under Federal Rules of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

"If a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (noting that this sanction "is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless[.]" (citation omitted)). The burden to show substantial justification or harmlessness is on the potentially sanctioned party. *Roberts*, 325 F.3d at 782.

## B. Daubert Standard

"Federal Rule of Evidence 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert*, 509 U.S. at 589). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Supreme Court of the United States stated in *Daubert* that a district court, when evaluating evidence proffered under Rule 702, must act as a gatekeeper, ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. This standard "attempts to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other." *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 176–77 (6th Cir. 2009).

The factors relevant in evaluating the reliability of the testimony include: "whether a method is testable, whether it has been subjected to peer review, the rate of error associated with the methodology, and whether the method is generally accepted within the scientific community." *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 970–71 (M.D. Tenn. 2002) (citing *Daubert*, 509 U.S. at 593–94). The inquiry is "a flexible one," and these factors do not constitute a definitive checklist or test. *Kumho Tire Co.*, 526 U.S. at 138–39 (citing *Daubert*, 509 U.S. at 593); *see also Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 152 (3d Cir. 1999) (explaining that these factors "are simply useful signposts, not dispositive hurdles that a party must overcome in order to have expert testimony admitted").

"Although *Daubert* centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge." *Rose v. Sevier Cnty.*, No. 3:08-CV-25, 2012 WL 6140991, at *4 (E.D. Tenn. Dec. 11, 2012) (citing *Kumho Tire Co.*, 526 U.S. at 138–39). "[A] party must show, by a 'preponderance of proof,' that the witness will testify in a manner that will ultimately assist the trier of fact in understanding and resolving the factual issues involved in the case." *Coffey*, 187 F. Supp. 2d at 70–71 (quoting *Daubert*, 509 U.S. at 593–94). The party offering the expert has the burden of proving admissibility. *Daubert*, 509 U.S. at 592 n.10.

The Court will not "exclude expert testimony merely because the factual bases for an expert's opinion are weak." *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 729 (6th Cir. 2012) (quotation marks and citations omitted). Exclusion is the exception, not the rule, and "the gatekeeping function established by *Daubert* was never 'intended to serve as a replacement for the adversary system.'" *Daniels v. Erie Ins. Grp.*, 291 F. Supp. 3d 835, 840 (M.D. Tenn. Dec. 4, 2017) (quoting *Rose v. Matrixx Initiatives, Inc.*, No. 07–2404–JPM/tmp, 2009 WL 902311, at *7 (W.D. Tenn. Mar. 31, 2009)) (other quotations omitted). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Rule 702 does not "require anything approaching absolute certainty." *Daniels*, 291 F. Supp. 3d at 840 (quoting *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671–72 (6th Cir. 2010)).

District courts generally have "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 375 (quoting *Kumho Tire*, 526 U.S. at 152). Decisions by the district court are thus reviewed for an abuse of discretion. *See id.* (citing *Nelson v. Tenn. Gas Pipeline Co.*, 234 F.3d 244, 248 (6th Cir. 2001). "This deferential standard makes sense because *Daubert* establishes a 'flexible' test that considers many

indicia of reliability[,]" and relevance will depend "on the particular science and the particular scientist before the court." *Id.* (citing *Kumho Tire*, 526 U.S. at 150).

## IV.  ANALYSIS

The Court has considered the parties' filings and the evidence submitted in support thereof. The Court finds that Plaintiff was under an obligation to disclose Dr. Tontz by the expert disclosure deadline and that his failure to do so is not substantially justified or harmless. The Court therefore finds that Plaintiff cannot rely on Dr. Tontz's opinions at trial. In light of this finding, the Court finds that Plaintiff is precluded from offering Tremp's opinions contained in the Second Report at trial. The Court, however, will allow Tremp to testify as to the matters contained in his First Report to the extent that there is a medical basis to support them as further explained below.[9]

### A.  Defendants' Request to Exclude Dr. Tontz's Opinions and the Evidence that Relies on Them

Defendants seek to exclude Dr. Tontz's opinion because Plaintiff failed to disclose him as an expert witness by the February 9, 2023 deadline to do so. Plaintiff responds that he was not required to disclose Dr. Tontz because he does not intend to call him at trial. In addition, relying on Rule 35, Plaintiff asserts that it "does not require a court order for a party to have [himself] examined by a physician" and that "no court order was required to allow [him] to speak to Dr. Tontz for whatever reason" [Doc. 86 p. 1 (emphasis omitted)]. Plaintiff states that Defendants were required to request Dr. Tontz's IME, and they failed to do so.

The Court finds Plaintiff's arguments are contrary to the Rules. Rule 26(b)(3)(D) shields consulting experts from discovery, except as provided in Rule 35(b) or on a showing of exceptional

---

[9] Defendants request a *Daubert* hearing with respect to their request to preclude Tremp from testifying, but they do not explain why a *Daubert* hearing is necessary. "A hearing is required only if the record is inadequate to decide the motion." *Alder v. Elk Glenn, LLC*, 986 F. Supp. 2d 851 (E.D. Ky. Dec. 6, 2013) (citation omitted). Defendants submitted Tremp's deposition testimony and Tremp's First and Second Reports.

circumstances. Fed. R. Civ. P. 26(b)(4)(D). But Dr. Tontz is more than a consulting expert. Rule 26(b)(4) "distinguishes between experts whose opinions will be presented at trial, referred to as 'testifying experts,' and experts employed solely for trial preparation, referred to as 'non-testifying experts' or 'consulting experts.'" *United States ex rel. Scott v. Humana Inc.*, No. 318CV00061GNSCHL, 2021 WL 3909906, at *3 (W.D. Ky. Aug. 31, 2021) (citation omitted). Although Plaintiff states that he is not calling Dr. Tontz at trial, he is presenting Dr. Tontz's opinions through Tremp. The Court agrees with Plaintiff that he is not required to seek a Court order allowing him to be seen by or speak with Dr. Tontz. But the Rules do require, to the extent Plaintiff intends to rely on Dr. Tontz's opinions at trial, to timely disclose them. *See* Fed. R. Civ. P. 26(a)(2). The Court finds that Plaintiff was under an obligation to disclose Dr. Tontz by the expert disclosure deadline.

Plaintiff relies on Rule 35, stating "by its plain language," it "requires the party asking for the IME . . . to request 'like reports of all earlier or later examinations of the same condition'" [Doc. 86 p. 2 (quoting Fed. R. Civ. P. 35(b)(3))]. And here, Defendants sought and received an IME with Dr. Koenig [*See* Docs. 48, 50]. Plaintiff therefore argues that Defendants were required to request the later IME by Dr. Tontz and that they failed to do so. Rule 35 provides as follows:

> **(3) *Request by the Moving Party.*** After delivering the reports, the party who moved for the examination may request--and is entitled to receive--from the party against whom the examination order was issued like reports of all earlier or later examinations of the same condition. But those reports need not be delivered by the party with custody or control of the person examined if the party shows that it could not obtain them.

Fed. R. Civ. P. 35(b)(3). The Advisory Committee note explains as follows:

> [Subdivision (b)(3)] also makes clear that reports of examining physicians are discoverable not only under Rule 35(b), but under other rules as well. To be sure, if the report is privileged, then discovery is not permissible under any rule other than Rule 35(b) and it is permissible under Rule 35(b) only if the party requests a

13

> copy of the report of examination made by the other party's doctor. *Sher v. De Haven,* 199 F.2d 777 (D.C. Cir. 1952), *cert. denied* 345 U.S. 936 (1953). But if the report is unprivileged and is subject to discovery under the provisions of rules other than Rule 35(b)--such as Rules 34 or 26(b)(3) or (4)--discovery should not depend upon whether the person examined demands a copy of the report. Although a few cases have suggested the contrary, *e.g., Galloway v. National Dairy Products Corp.,* 24 F.R.D. 362 (E.D.Pa.1959), the better considered district court decisions hold that Rule 35(b) is not preemptive. *E.g., Leszynski v. Russ,* 29 F.R.D. 10, 12 (D. Md.1961) and cases cited. The question was recently given full consideration in *Buffington v. Wood,* 351 F.2d 292 (3d Cir. 1965), holding that Rule 35(b) is not preemptive.

Fed. R. Civ. P. 35(b)(3) advisory committee's note to 1987 amendment. In other words, Plaintiff cannot rely on Rule 35 as a back door to utilize Dr. Tontz's untimely disclosure. *Buffington,* 351 F.2d at 297 ("The directive of the Federal Rules to eliminate surprise from litigation demands that we construe them reasonably to facilitate this goal and maximize pre-trial exchange of materials.").[10] But even if this were permissible, Defendants submit, and Plaintiff does not sufficiently rebut, that they requested such information during discovery, and Plaintiff never

---

[10]     In support of his position, Plaintiff relies on *Waggoner v. Ohio Cent. R.R.*, 242 F.R.D. 413, 414 (S.D. Ohio 2007), wherein the court held "that Rule 35 examinations, and the issuance of reports following these examinations, proceed independently of Rule 26(a)(2)." The court reasoned, "At the time a party requests a Rule 35 examination, it is not necessarily the case that the examining physician will be called to testify at trial. Often, the results of the examination simply confirm what the injured party's doctors have reported, and the Rule 35 examiner therefore services only as a consultant to the defending party and not as a trial witness." *Id.* The court concluded "that the deadline which it set in this case for the disclosure of expert reports under Rule 26(a)(2) does not apply to the issuance of a Rule 35." *Id.* The Court finds *Waggoner* inapposite. As Plaintiff acknowledges, he was not required to seek an order under Rule 35 to be examined by or speak with Dr. Tontz and did not do so. But even if the Court granted an IME with Dr. Tontz, as one court explained, "[C]ourts following the *Waggoner* decision have noted that its 'independent operation' rationale is limited to Rule 35 examiner who has *not* been designated as a testifying witness." *Larson v. Davidson Trucking, Inc.*, No. 2:20-CV-250-PPS-JPK, 2023 WL 4362484, at *6 (N.D. Ind. July 5, 2023). Thus, even if Plaintiff sought an order under Rule 35, he would still need to disclose Dr. Tontz. While Plaintiff claims that he has not designated Dr. Tontz's as a trial witness, he cannot genuinely dispute that he is attempting to present Dr. Tontz's opinions to the jury by way of Tremp.

supplemented his responses as required under Rule 26(e) to identify Dr. Tontz or disclose his IME as requested [*See* Doc. 91 p. 6 (Interrogatory No. 4 and Request for Production Nos. 34 and 35)]. The Court finds Plaintiff's argument not well taken.

In light of the Court's finding that Plaintiff was required to disclose Dr. Tontz on February 9, 2023, and failed to do so, the Court turns to Rule 37. As mentioned above, Rule 37(c) requires exclusion unless the harm is substantially justified or harmless. Plaintiff has not argued that his failure to timely disclose Dr. Tontz is harmless or substantially justified, which alone is grounds for granting Defendants' motion. *Eiben v. Gorilla Ladder Co.*, No. 11-CV-10298, 2013 WL 1721677, at *4 (E.D. Mich. Apr. 22, 2013) ("Where a plaintiff does not make any argument of harmlessness or justification, a district court does not abuse its discretion in excluding the expert's report." (citation omitted)); *Atia v. Delta Airlines, Inc.*, No. CV 08-150-DLB, 2010 WL 11646916, at *2 (E.D. Ky. July 2, 2010) (explaining that the plaintiff failed to meet the discovery deadline and did "not attempt[] to explain why her failure to comply was substantially justified or harmless[,]" and therefore "exclusion of any previously undisclosed evidence is mandatory" (citation omitted)). In any event, the Court has considered the circumstances of this matter. The Sixth Circuit has identified five factors to consider when assessing whether a party's omitted or late disclosure is "substantially justified" or "harmless" as follows: "'(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.'" *Howe v. City of Akron*, 801 F.3d 718, 747–48 (6th Cir. 2015) (quoting *Russell v. Abs. Collection Servs., Inc.*, 763 F.3d 385, 396–97 (4th Cir. 2014)).

As to the first *Howe* factor—Defendants' surprise—the Court finds it weighs in favor of excluding Dr. Tontz's opinions. To be sure, in an email dated August 24, 2023, Plaintiff's

counsel's paralegal wrote to defense counsel, "Through error, I included Dr. William Tontz as one of Plaintiff's experts to be deposed" [Doc. 86-1 p. 3]. A day later, on August 25, 2023, Plaintiff's counsel confirmed that "Dr. Tontz will be not called as a witness" [*Id*. at 2]. [11] Plaintiff saw Dr. Tontz on March 11, 2023, but Plaintiff did not disclose him until Tremp's deposition on September 15, 2023. Exacerbating Defendants' surprise is the fact that Tremp relied on Dr. Tontz's opinions to issue a new report, which was also disclosed on the day of Tremp's deposition, despite it being finalized in July 2023. Defendants were surprised by the late disclosure.

With respect to Defendants' ability to cure the surprise, the Court finds this factor weighs in favor of excluding Dr. Tontz. Plaintiff did not disclose Dr. Tontz's IME until September 15, 2023, approximately seven months after the expert disclosure deadline. [12] While the deadline for discovery does not expire until November 10, 2023, [*see* Doc. 47], this is not sufficient time for Defendants to take discovery from Dr. Tontz and obtain any rebuttal to Dr. Tontz's opinions.

With respect to the third *Howe* factor—disruption to the trial date—the Court finds this factor weighs in favor of exclusion. As Defendants note, Plaintiff's expert disclosures were due

---

[11]    Notably, this was not the first reference to Dr. Tontz. On February 13, 2023, the Court granted Defendants' motion to compel an IME with Dr. Thomas M. Koenig but ordered the parties to meet and confer regarding the "time, manner, conditions, and scope of the IME" [Doc. 76]. On February 14, 2023, defense counsel wrote to Chambers that the parties had agreed to the time, manner, conditions, and scope of the IME with Dr. Koenig but that Plaintiff wanted to add another IME with Dr. Tontz [Doc. 76-6]. Defendants stated that they did not object to a second IME, but they were concerned that this request was made after Plaintiff's expert disclosure deadline and that Plaintiff needed to seek relief with respect to the deadlines [*Id*.]. The Court responded, "Any additional requests not related to the IME with Dr. Koenig need to be made by separate motion" [Doc. 76-7 p. 2]. Plaintiff did not file a motion.

[12]    It also appears Dr. Tontz is subject to the requirements of Rule 26(a)(2)(B) given that there is no evidence that he was or is treating Plaintiff. And here, Dr. Tontz's IME does not comply with the requirements listed in Rule 26(a)(2)(B). This also supports Defendants' inability to cure the surprise.

16

on February 9, 2023, and Plaintiff was approximately seven months late in disclosing Dr. Tontz. Trial is set for January 9, 2024, and adding another expert would affect this setting.

The fourth *Howe* factor—the importance of the evidence—weighs slightly against exclusion. Defendants argue that "Dr. Tontz is not a treating physician" and that "[h]e only communicated with Plaintiff once" [Doc. 76 p. 12]. Defendants characterize Dr. Tontz's report as "deficient . . . without proper foundation" [*Id.*]. Although Plaintiff did not sufficiently respond to these arguments, the Court notes that Tremp relies on Dr. Tontz's medical opinion to provide an opinion on Plaintiff's future medical needs.

With respect to the fifth *Howe* factor, the reason for the late disclosure, it weighs in favor of exclusion. Plaintiff does not explain why he did not provide Defendants with Dr. Tontz's IME until September 15, 2023—the day of Tremp's deposition. Instead, Plaintiff argues that he was not required to disclose Dr. Tontz. For the reasons explained above, the Court finds Plaintiff's argument not well taken.[13]

Based on the analysis above, the Court finds that Dr. Tontz's opinions should be excluded in this matter. *Atia*, 2010 WL 11646916, at *2 ("'The test is very simple: the sanction is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless.'" (quoting *Vance ex rel. Hammons v. United States*, 182 F.3d 920 (6th Cir. 1999)). In

---

[13]     As the Sixth Circuit Court of Appeals has noted, "The advisory committee's note to Rule 37(c) 'strongly suggests that "harmless" involves an honest mistake on the party of a party coupled with sufficient knowledge on the part of the other party.'" *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003) (quoting *Vance v. United States,* No. 98–5488, 1999 WL 455435, at *5 (6th Cir. June 25, 1999) (unpublished table decision)); *see also* Fed. R. Civ. P. 37(c)(1) advisory committee's note (1993) (giving as an example of a harmless violation the "inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties"). But even if Plaintiff could establish that the untimely disclosure was an honest mistake, Defendants did not have sufficient knowledge that Plaintiff intended to present Dr. Tontz's opinions at trial. In fact, on August 25, 2023, Plaintiff's counsel stated that Dr. Tontz would not be called as a witness [Doc. 86-1 p. 2].

light of this finding, the Court does not find it necessary to address Defendants' arguments that Dr. Tontz's opinions are unreliable.

Defendants also seek to exclude all evidence that relies on Dr. Tontz's opinions, *i.e.* Tremp's Second Report. Plaintiff responds that pursuant to Rule 703, Tremp "may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted" [Doc. 93 p. 8 (quoting Rule 703)]. Plaintiff includes an affidavit from Tremp, explaining his methodology and that in his practice, "it is customary and reasonable among life care planners to consult with medical experts of a similar specialty to that of a treating physician to obtain their input on the types and frequency of medical treatment a subject will require in the future" [Doc. 93-1 p. 2]. But "[t]his argument misses the mark. The issue before this Court is not whether an expert may rely upon the work of others in formulating his or her opinions. The issue is whether, after the deadlines to disclose experts [have] passed, commissioning an undisclosed expert to provide an opinion based upon previously available and existing evidence is properly considered an untimely expert report from an undisclosed expert." *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, No. 2:17-CV-998, 2020 WL 8920991, at *4, *10 (S.D. Ohio Jan. 15, 2020) (striking expert report as an untimely report from an undisclosed expert). And here, Dr. Tontz provided an opinion on Plaintiff's future medical needs, which Tremp utilized to issue his Second Report. Given that Dr. Tontz's opinions are not admissible, Tremp has no basis to support his opinions in his Second Report.[14]

---

[14]   Plaintiff does not argue that Tremp's Second Report is a supplementation under Rule 26(e). But even if Tremp's Second Report is a proper supplementation, such a finding does not result in Plaintiff using Rule 26(e) as a back door to disclose Dr. Tontz's untimely opinion. *See generally Gilbane Bldg. Co. v. Downers Grove Community High School District No. 99*, 2005 WL 838679,

### B.      Defendants' Request to Preclude Tremp's Testimony

Citing to Dr. Triantafillou's deposition testimony, Plaintiff asserts that "even if Dr. Tontz's report were stricken, there is a sufficient basis to support the life care plan's findings regarding the need for future surgery, and that portion of the life care plan should remain in place" [Doc. 93 p. 6]. In addition, Plaintiff states that there is also medical support for future monitoring of his condition. For instance, Plaintiff states that Dr. Triantafillou testified that Plaintiff would more likely than not develop post-traumatic arthritis, but Dr. Triantafillou simply differs in how he monitors the prognosis. Plaintiff states, "Where Dr. Triantafillou's approach differs from Dr. Tontz's is that Dr. Triantafillou takes a more 'hands-off' approach to monitoring" [*Id*. at 7]. Plaintiff relies on Dr. Triantafillou's testimony that he releases patients but tells them to come back if they have pain. "[O]n the other hand," however, Plaintiff states that Dr. Tontz "recommend[s] yearly monitoring" [*Id*.].

Defendants respond that Dr. Triantafillou did not indicate that Plaintiff would need knee replacement surgery. Defendants urge the Court to disregard Plaintiff's arguments regarding future monitoring, stating that "Dr. Triantafillou was able to give a reason why he doesn't recommend expensive ongoing monitoring: because it doesn't change treatment and the patient should be able to 'live life'" [Doc. 97 p. 4]. Defendants state that "Plaintiff is unable to explain [Dr.] Tontz's reasoning for suggesting ongoing monitoring and treatment[]" [*Id*.].

For the reasons explained above, Plaintiff is not allowed to present or rely on Dr. Tontz's opinions, even his opinions about future monitoring. But there is evidence in the record to support limited future monitoring, such as an X-ray, and a total knee replacement. Dr. Triantafillou

---

at *9 (N.D. Ill. 2005) ("[T]he concept of a supplemental report suggests that the supplemental opinions will be the opinions of the expert who prepared the original report, not the opinions of a different expert.")

explained that unlike the bone, Plaintiff's "joint surface will never heal" [Doc. 76-1 p. 12]. He

further testified:

> Q.     Okay. And so if you were to offer an opinion about his
> progress from his recovery or prognosis, you believe you
> would need to physically evaluate him or at least ask him
> how he was doing in the last several years?
>
> A.     No.  Once you've reached what I would consider maximum
> medical improvement for that acute phase, the issues with
> posttraumatic arthritis can develop over decades.  It could be
> 2 years.  It could be—and we're extrapolating data from
> other joint surfaces, but it could be in 10 years, 20 years.  At
> this point, what I tell patients typically is "Lead your life,
> work.   Don't let this hold you back, but if you start
> experiencing pain, we'll re-X-ray you" because I don't find
> value in serial X-rays over the course of a lifetime if it's not
> causing    someone    discomfort.    It    doesn't    change
> management.  I'd rather release someone and then have then
> come back when they're having pain because I'm always
> available for that patient.

[*Id*. at 20].  Later, during his deposition, counsel asked how Dr. Triantafillou would medically

assess whether Plaintiff is a candidate for a knee replacement, and Dr. Triantafillou explained:

> A.     What I would have to see is that he has narrowing of his
> joint; thickening of the bone between the joints; bone spurs;
> which are called osteophytes, and correlating that with
> generalized knee pain because arthritis can be generalized.
> It can either be in the front, the side.  It can be throughout
> the knee, the back of the knee that responds or doesn't
> respond to nonsurgical means.  So the process would be anti-
> inflammatories, if he's describing knee pain with X-ray
> evidence of arthritis, steroid injection.  If that doesn't work,
> physical therapy, and after a process of failing nonoperative
> means, then you would progress to knee replacement as a
> last resort.

[*Id*. at 21].  Dr. Triantafillou agreed that he would need radiographic images and would go through

nonsurgical options prior to a knee replacement [*Id*.].  He opined that he "cannot say with

certainty" Plaintiff will need a total knee replacement but noted "if [he] had to bet," he would bet

that Plaintiff will "have problems in the future" [*Id*.].  Earlier in his deposition, he testified that

Plaintiff would likely develop arthritis and "more likely than not" need a knee replacement [*Id.* at 13].

Defendants argue that Dr. Triantafillou testified that he was uncertain whether Plaintiff would need a total knee replacement, but regardless, if he suggested that it was certain in his deposition, Defendants contend that Dr. Triantafillou "disavowed that certainty with his subsequent reports" [Doc. 82 p. 5 n.2]. But in reviewing the two questionnaires, Dr. Triantafillou checked "yes" both times when asked if there was a greater than 50% probability that Plaintiff will require additional surgical intervention [Doc. 76-2 p. 4; Doc. 76-3 p. 4].[15] To the extent that Tremp relies on Dr. Triantafillou's opinions for his life care plan, the Court finds such testimony admissible, and the weight to be afforded to such testimony is for the jury to consider.

## V. CONCLUSION

For the reasons explained above, the Court **GRANTS** Defendants' Motion to Preclude the Records and Opinions of Plaintiff's Undisclosed Expert, Dr. William L. Tontz, and Any Testimony and Opinions Relying on those Records and Opinions [**Doc. 76**] and **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Exclude the Testimony of Plaintiff's Expert Robert P. Tremp and Supporting Memorandum of Law [**Doc. 82**].

**IT IS SO ORDERED.**

ENTER:

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge

---

[15] The Sixth Circuit has stated that a physician is not required to testify "to a reasonable degree of medical certainty," and including that phrase "does not make a causation opinion admissible." *Johnson v. Memphis Light Gas & Water Div.*, 695 F. App'x 131, 136–37 (6th Cir. 2017). Instead, most courts "require an expert opinion express a probability, which is more than a mere possibility," and "'probability' means more likely than not." *Id.* at 137 (other citation omitted).