UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| LOUIS EDWARD HILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:21-CV-31-TAV-DCP |
| ) | |
| CENTURY ARMS, INC., and CENTURY ) | |
| INTERNATIONAL ARMS, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Defendants' Motion to Exclude the Testimony of Plaintiff's Expert Rick Harper and Supporting Memorandum of Law [Doc. 85]. Plaintiff responds in opposition to the motion [Doc. 96], and Defendants filed a reply [Doc. 99]. The motion is ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a). For the reasons explained below, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion [**Doc. 99**].

### I.    BACKGROUND

On November 28, 2017, Plaintiff purchased a 9mm Canik TP9SF Elite model pistol ("Pistol") [Doc. 18 ¶ 34]. According to the allegations in the Amended Complaint, on February 25, 2019, Plaintiff was injured when the Pistol fell while in the holster, struck the ground, and fired [*Id*. ¶¶ 1, 35]. He claims that the Pistol "unintentionally discharged due to a safety defect which rendered [it] unreasonably dangerous and unfit for its intended use" [*Id*. ¶ 2]. The Amended Complaint alleges that Defendants "designed, manufactured, imported, marketed, distributed,

and/or sold" the Pistol [*Id.* ¶ 1].[1] According to the allegations in the Amended Complaint, "on September 1, 2017, Defendants announced a 'Product Safety Warning and Severe Duty Upgrade Notice[,]'" which was not a recall but instead a "voluntary upgrade" [*Id.* ¶ 7 (emphasis omitted)]. The notice applied to Plaintiff's Pistol [*Id.* (emphasis omitted)]. The notice acknowledged that the "dropping of pistols may result in damage to safety features and unintentional discharge" [*Id.* (emphasis omitted)]. Based on the above, Plaintiff alleges negligence; strict liability for manufacturing and design defect; negligence and strict liability for failure to warn; and he includes allegations relating to vicarious liability [*Id.* ¶¶ 38–165].

Relevant to the instant filings, Plaintiff retained Rick Harper, Ph.D. ("Dr. Harper") from Economic Consulting Services, Inc., who provided a report ("Dr. Harper's Report") detailing the "calculations of the present money value of past lost earning capacity and value of household services alleged to have resulted from the injury to [Plaintiff] that occurred on February 25, 2019" [Doc. 85-1 p. 2]. In addition, Dr. Harper's Report "includes the present money value of the Robert P. Tremp, Jr. Life Care Plan dated 9/27/2022" and states that "[t]he values of damages presented here are appropriate for September 30, 2022" [*Id.*]. In addition to utilizing Robert P. Tremp, Jr., Life Care Plan ("Tremp's First Report"), Dr. Harper reviewed Plaintiff and his wife's tax returns from 2016–2021; Plaintiff's completed questionnaire; Plaintiff's responses to Defendants' First Interrogatories; and Plaintiff's recent pay sub [*Id.*].

With respect to the medical cost inflation rate and the discount rate, Dr. Harper explained:

> <u>Medical cost inflation rate</u>
> The necessary procedures and therapies identified in [Tremp's First Report] are to be performed in the future. Because of this, we use inflation figures appropriate for medical care procedures as analyzed and published by the U.S. Bureau of Labor Statistics (BLS). Here

---

[1] Defendants deny that they manufacture pistols and claim that they import and distribute them [Doc. 33 ¶¶ 16, 23].

medical cost inflation index is projected to increase at an annual rate of 3.1 percent, which is representative of its rate of increase in recent years.

Discount rate
When an award is made today to replace money that would have been received or spent in the future, an adjustment must be made to reflect the time value of money. This is because money received today can be invested to earn a return over time, so that a dollar that would have been received in the future can be replaced at that future time through payment of the principal and accrued interest on a lesser amount invested today. The current market rate of interest on a risk-free asset (here the 10-year U.S. Treasury constant maturity rate) represents the current yield on a relatively risk-free asset over the time during which the anticipated medical procedures are likely to be performed. This rate was 3.72 percent and is used to discount future expected medical spending back to present money value.

[*Id*. at 4].

Based on the above, Dr. Harper concluded:

> This report presents my calculations of lost past and future earning capacity and household services for [Plaintiff] that resulted from his accident on February 25th, 2019. The value of the lost past earning capacity as a Network Engineer and as a Bail Bondsman is $6,745. The present money value of the Life Care Plan is $76,100. Thus[,] the total value of lost earning capacity, household services, and the present money value of the Life Care Plan is $82,845.

[*Id*.].[2]

Defendants took Dr. Harper's deposition on September 22, 2023 [Doc. 85-5]. At the beginning of the deposition, defense counsel asked, "What have you done since [September 2022] because I haven't seen any work done, any reports or anything since September of '22" [Doc. 86-6 p. 4]. Dr. Harper responded:

> That's basically correct. I have received within the last week to 10 days an updated life care plan from Mr. Tremp. I have not yet incorporated that into a report. I anticipate that following the

---

[2] Dr. Harper opined that the "value of lost household services associated with the accident is de minimis" [Doc. 85-1 p. 4].

3

> deposition and setting of a potential trial date that I will update
> interest rates that I've used to discount back to present money value
> in this matter as well as any other information that has come in since
> the writing of this initial report September 30, 2022.

[*Id*. at 4].³ Defense counsel asked if Dr. Harper was going to conduct a new damages assessment based upon Tremp's Second Report, and Dr. Harper repeated that he "recently received" it and that the damages identified therein "are about 2.1 times higher than they were in the initial report" [*Id*.]. But in preparation of the deposition, Dr. Harper "looked at the new life care plan and identified what the present money value of that life care plan is" [*Id*.]. Dr. Harper opined that the present money value based on Tremp's Second Report is $159,165. [*Id*.]. Dr. Harper testified that in order to arrive at his $159,165 calculation, he utilized the 10-year bond yield interest rate for September 2022, which was 3.72%, but the rate is now 4.4 to 4.5% [*Id*.]. Dr. Harper acknowledged that the 3.72% rate was not an appropriate methodology because "[i]t needs to be updated to reflect current bond yields" [*Id*.].

Later during the deposition, defense counsel asked if Dr. Harper was abandoning the September 2022 calculations, and Dr. Harper said that he would "updat[e] it to reflect Mr. Tremp's updated calculations" [*Id*. at 9]. When asked if his methodology will change, Dr. Harper explained:

> A. Well you'll see that the methodology includes subsections. Base income capacity which has not changed, remaining work life expectancy which has not changed, household services which has not changed, medical cost inflation rate[,] I will plan on updating that to a current, the most current

---

³ The Court has detailed the facts that led Robert Tremp to author a second life care plan ("Tremp's Second Report") [Doc. 103]. The Court will not repeat that factual history here. But in summary, Plaintiff attended a telemedicine independent medical evaluation ("IME") with William Tontz, M.D. ("Dr. Tontz"), on March 3, 2023, which resulted in Tremp authoring a Second Report [*Id*. at 5–6]. Plaintiff did not disclose Dr. Tontz's IME or Tremp's Second Report until Tremp's deposition on September 15, 2023 [*Id*.]. The Court has excluded Dr. Tontz's opinions in this matter and precluded Plaintiff from offering Tremp's Second Report [*Id*. at 17–18].

4

> medical cost inflation rate however I do not expect that rate
> to change given that it's representative of recent years and
> then the discount rate we've discussed how that will change
> to reflect the most current rate on the 10-year treasury.

[*Id*.]. With respect to his conclusion relating to the value of lost past earning capacity of $6,745, Dr. Harper stated that "it [i]s appropriate to reduce the present value of lost earning capacity to reflect an average tax rate of approximately 10 percent[,]" meaning this number would be reduced to approximately $6,070 [*Id*. at 9, 10]. And with respect to the medical cost inflation rate, Dr. Harper states that he may need to update the 3.1% "but given that's an average over the past several years[,] [he] does not expect to see much of a change" [*Id*. at 9]. Dr. Harper states that his percentages are from the United States Bureau of Labor Statistics and that he "calculate[s] an average rate of change from BLS data" [*Id.*]. In other words, he "average[s] labor statistics data on medical costs" [*Id.*].

Defendants move to exclude Dr. Harper pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure, Rules 401–403, 407, and 702 of the Federal Rules of Evidence, and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) [Doc. 85]. Defendants argue that Dr. Harper had not submitted a supplemental report at the time of his deposition and that he was unprepared. Defendants present three primary grounds for excluding Dr. Harper. First, Defendants argue that Dr. Harper's Report is no longer valid because it does not include his valuation of Tremp's Second Report. Second, Defendants state that Dr. Harper "conceded that he did not update his analysis using current 10-year U.S. treasury yields or discount rates" [*Id*. at 2]. Third, Defendants assert that "Dr. Harper's methodology is flawed" because "[w]hen performing his analysis before the deposition, he used an antiquated 10-year U.S. Treasury maturity rate . . . which artificially inflated the cost of Plaintiff's future medical expenses" [*Id.*].

Plaintiff responds that Dr. Harper's Report was timely disclosed, thorough, and "based on a recognized methodology in his profession," in which he "explained repeatedly that updates on the report would, of necessity, need to be performed closer to the time of trial due to the volatility of today's interest rates" [Doc. 96 p. 6].  Plaintiff argues that Dr. Harper provided supplemental information during his deposition, which is considered timely under the Scheduling Order and Rule 26(e).  In addition, Plaintiff states that Tremp's life care plans are admissible, and as such, Dr. Harper may rely on them.  But even assuming that "either of Tremp's life care plans are excluded, causing the reduction of those costs to present day value by Dr. Harper to be excluded, Dr. Harper's lost earnings calculations are sufficiently supported to keep them from being excluded" [*Id*. at 8].  To the extent Defendants argue that Dr. Harper's methodology is flawed, Plaintiff states that they are "conflating methodology with the accuracy of data" [*Id*.].  Plaintiff concludes that Dr. Harper's use of the interest rate in September 2022 does not render his opinion inadmissible under *Daubert*.  Instead, Plaintiff asserts, "Dr. Harper expects, as would other experts in his field, to have to update those calculations as time progresses" [*Id*. at 9].  Plaintiff contends that there is "no evidence that Dr. Harper's methodology, i.e., the way he calculated the present value of future or past monies, will change whether the 10-year bond yield rate is 3.2% or 4.8%" [*Id*.].  According to Plaintiff, it is only "the amounts [that] will differ" [*Id*.].

Defendants reply that while "Plaintiff spends a great deal of time discussing [Dr. Harper's Report] . . . that report is not at issue because, . . . [Dr.] Harper admitted in his deposition that the 2022 Report was no longer valid because it does not include [Dr.] Harper's valuation of [Tremp's Second Report]" [Doc. 99 p. 2].  Defendants emphasize that "Harper has not produced an updated or supplemental report" [*Id*. (emphasis omitted)].  In addition, Defendants state that Plaintiff has not addressed how his failure to supplement is harmless or substantially justified, thereby waiving

this argument. Defendants maintain that "Harper's opinions are unreliable because their only support is the unreliable opinions of Tremp and Tontz" [*Id.* at 3 (emphasis omitted)]. Arguing that "Plaintiff concedes that calculating the proper discount rate is important," Defendants state that "Harper was unprepared for the deposition and that he had not produced a supplemental report applying the proper methodology with the proper 10-year Treasury Yield" [*Id.* at 5]. Defendants claim that they "were denied the opportunity to depose [Dr.] Harper with a current expert report setting out his updated opinions" [*Id.*].

**II.     ANALYSIS**

As an initial matter, much of Defendants' briefs are devoted to Dr. Harper's anticipated supplemental report based on Tremp's Second Report. The Court has already ruled that Plaintiff cannot rely on Dr. Tontz's opinions at trial or submit any evidence that relies on his opinions, which includes Tremp's Second Report. By extension, this precludes Dr. Harper from issuing a supplemental report based on Tremp's Second Report. Therefore, the Court finds it unnecessary to address these issues herein. Thus, the only remaining question before the Court is whether Dr. Harper's opinions are unreliable because he used a rate in September 2022 that had changed given the timing of his deposition on September 23, 2023.[4]

While Defendants assert that Dr. Harper's methodology is flawed, the Court agrees with Plaintiff that Defendants are "conflating methodology with the accuracy of data" [Doc. 96 p. 8]. *See Hutchens v. Abbott Lab'ys, Inc.*, No. 1:14CV176, 2016 WL 10566144, at *4 (N.D. Ohio Dec. 22, 2016) ("The Court further finds Dr. Burke's calculation of the discount rate by applying the

---

[4]     Defendants assert that Dr. Harper's Report is "obsolete" and no longer valid [Doc. 85 p. 4 (citing Doc. 85-6 p. 9); Doc. 99 p. 2]. But Dr. Harper said that he would update his report to reflect the information in Tremp's Second Report. Even though the Court has excluded Tremp's Second Report, this does mean that Dr. Harper's Report, which does not rely on Tremp's Second Report, is no longer valid.

7

U.S. Treasury yield rates for a particular date to be a reliable method for determining the discount rate."). Dr. Harper simply did not update his calculations to account for the time between when he drafted his report and his deposition. *See id*. at *5 (finding no basis to exclude the expert's testimony, noting in part that the expert testified that he intends to update the loss of future earnings and costs of medical care before trial). But this is not a basis for exclusion under *Daubert*. *See Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 176–77 (6th Cir. 2009) (explaining that the Rule 702 standard and the *Daubert* standard "attempts to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other").

Pursuant to the Scheduling Order in this case, "The parties shall supplement [their expert disclosures] when required under subdivision (e)(1)." Rule 26(e)(1) states as follows:

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>
> **(A)**    in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> **(B)**    as ordered by the court.

Fed. R. Civ. P. 26(e)(1)(A)–(B).[5] Rule 26(e) does not define "in a timely manner" and the phrase "necessarily depend[s] on the facts and circumstances of each case." *EEOC v. Dolgencorp, LLC*, 196 F. Supp. 3d 783, 795 (E.D. Tenn. 2016) (citation omitted), *aff'd*, 899 F.3d 428 (6th Cir. 2018). Here, Dr. Harper explained during his deposition that Plaintiff's present value of lost earning

---

[5]    The Court notes that under Rule 26(e)(2), supplements to expert disclosures are due at the time of the parties' pretrial disclosures under Rule 26(a)(3) or thirty days before trial [*See* Doc. 21 p. 3].

capacity should be reduced from $6,745 to approximately $6,070 to reflect the average tax rate of approximately 10%. He further testified that the medical cost of inflation would need to be updated from the 3.1% in September 2022, although Dr. Harper does not expect much of a change given that the rate is an average of the past few years. Defendants claim that they were "denied the opportunity to depose [Dr.] Harper with a current expert report setting out his updated opinions" [Doc. 99 p. 5]. But the Court has reviewed the transcript of Dr. Harper's testimony wherein he explained how he arrived at his numbers and the source he uses in his formula, and notes that Defendants even cite to Dr. Harper's source in their motion [Doc. 85 p. 3 (citing Doc. 85-4 p. 2 (Selected Interest Rates))]. The Court finds no basis to exclude Dr. Harper's Report.

### III. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Exclude the Testimony of Plaintiff's Expert Rick Harper and Supporting Memorandum of Law [**Doc. 85**]. While Dr. Harper is not permitted to offer testimony regarding his proposed calculations as a result of Tremp's Second Report, the Court declines to exclude him from testifying in this matter.

**IT IS SO ORDERED.**

ENTER:

_Debra C. Poplin_
Debra C. Poplin
United States Magistrate Judge